IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAULETTE M. DOLBY, as Administratrix of the Estate of OMEGA CURTIS LEACH, III, deceased,<br>　　　　　　Plaintiff, | : : : : : | CIVIL ACTION |
| v. | : | No. 07-5288 |
| UNIVERSAL HEALTH SERVICES, INC., et al.,<br>　　　　　　Defendants. | : : : : | |

**ORDER**

**AND NOW**, this 3rd day of August, 2009, upon consideration of Defendant City of Philadelphia's Motion for Summary Judgment (doc. no. 49) and Plaintiff's response in opposition (doc. no. 57), the Court finds that:

1)　Plaintiff has brought civil rights claims against the City of Philadelphia (hereinafter, "the City") alleging a "state-created danger" pursuant to 42 U.S.C. §1983. These claims stem from the City's contractual relationship with the Chad Youth Enhancement Center (hereinafter, "Chad") regarding the placement of delinquent youths such as the deceased, Omega Leach.

2)　The City asserts that they are entitled to summary judgment on several grounds. First, they note that they did not have custody of Leach when he died and that the Philadelphia Court of Common Pleas of the First Judicial District of Pennsylvania ordered his placement at Chad. The City also argues that Plaintiff cannot point to an affirmative act on the part of the City, and that the City's contracting with Chad amounts only to an alleged failure to act. (Defendant's Memo. of Law, pp. 2, 18-20).

3)  Plaintiff counters that summary judgment is not appropriate because custody is not an element of the due process state-created danger claim. Plaintiff also argues that the City's actions were a "but for" cause of the Philadelphia Court of Common Pleas, Family Court, ordering Leach's placement at Chad. That is, "but for" the City's continued renewal of the contract with Chad, the Philadelphia Court would have most likely not ordered Leach to the Chad facility. Plaintiff further asserts that the claims at issue are based on the City's affirmative acts of renewing and expanding contracts with Chad, not a failure to act. (Plaintiff's Memo. of Law, pp. 2, 24-27).

4)  Summary Judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In examining Defendants' motion, we must view the facts in the light most favorable to the nonmovant. Intervest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003). All reasonable inferences must be drawn in the nonmovant's favor. Id. Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

5)  Generally, the City first argues that the facts presented by Plaintiff do not present a cognizable §1983 claim because the Philadelphia Court's decision to place Leach in an out-of-state facility was not dependent on the City's contract with Chad. Rather, the City emphasizes that the Philadelphia Court could have ordered a delinquent youth such as Leach

2

to any facility with or without a contract with the City. (Defendant's Memo. of Law, p. 13). However, the deposition testimony of the Former Commissioner of the Philadelphia Department of Human Services Ransom-Garner and Probation Officer Meissler reflect that children are generally only placed at facilities which have established contracts with the City, and special placements at non-contract facilities are only used when there are no suitable contract facilities. (Plaintiff's App., Exhibit 6, pp. 74, 80-81; Exhibit 7, p. 28). Thus, for purposes of summary judgment, the City's argument that their contract with Chad was inconsequential is undermined by the facts of record establishing that children were only sent to non-contract facilities as a last resort.

6) The City also asserts that summary judgment should be granted as many of the elements of the state-created danger doctrine have not been met. The four elements of this doctrine are: (1) the harm ultimately caused was foreseeable and direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor affirmatively used his or her authority in a way that a created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006).

7) The City does not dispute that Plaintiff can point to sufficient facts establishing element one (1) of the state-created danger doctrine. Thus, the Court will consider the City to have conceded that there is a genuine dispute as to whether the harm ultimately caused was foreseeable and direct.

8)     Regarding element two (2), and viewing the facts of record in the light most favorable to Plaintiff, we find that there is a genuine dispute of material fact as to whether the City, acted with a degree of culpability that shocks the conscience. Specifically, we find that Plaintiff should be permitted to ask the jury to determine whether the City's renewed contract with Chad, when viewed in conjunction with the City's own investigations and evaluations regarding restraint procedures at Chad, "shocks the conscience." Phillips v. Cty. of Allegheny, 515 F.3d 224, 240 (3d Cir. 2008) (the determination of "shocks the conscience" "depends largely on the circumstances of the case."). These investigations could establish that the City knew or should have known of ongoing restraint procedure problems and yet continued to renew the contract with Chad.[1] Sanford v. Stiles, 456 F.3d 298, 306 (3d Cir. 2006) (deliberate indifference, gross negligence or recklessness can be enough to "shock the conscience").

9)     Summary judgment must also be denied because, contrary to the City's assertions, physical custody is not a required element of the state-created danger doctrine. See Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996) (finding that there was a state created danger when police officers stopped a husband and wife walking home at night, sent the husband home, and then

---

[1] The information obtained from these investigations included but is not limited to a prior restraint that resulted in numerous stitches to a juvenile's chin; a restraint injury which necessitated emergency room treatment; reports by City agency officials concluding that "some CHAD residents are being treated in a harsh manner, if not in an improper or illegal manner during the physical restraint process;" and a licensing review conducted by the Tennessee Department of Children's Services concluding that Chad had "a significant problem with immature and poorly trained staff, resulting in inappropriate restraints." (Plaintiff's App., Exhibits 13-15, 19, 21-23).

left the intoxicated wife alone on the side of the road, not in custody, in cold weather at night); see also, Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 912-14 (3d Cir. 1997) (holding that the plaintiff need not prove a direct relationship between plaintiff and defendant (i.e. custody), but must allege more of a relationship than just being a member of the public at large).[2] Plaintiff must allege facts sufficient to establish that there was a relationship between Leach and the City such that he was either a foreseeable victim of the City's conduct or a member of a discrete class of persons subjected to potential harm brought about by the City's actions Id. Viewing the facts of record in a light most favorable to Plaintiff, both elements are satisfied. First, given the allegations of prior restraint problems developed by Plaintiff, a jury should be allowed to consider whether Leach was a foreseeable victim of the

---

[2] The City's reliance on Nicini v. Morra, 212 F.3d 798 (3d Cir. 2000), is also misplaced. While the Third Circuit has held as a general proposition that "a state's failure to protect an individual against private violence does not constitute a violation of due process," the Court also found that pursuant to DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200 (1989), in certain situations, such as prison or placement in foster care as in Nicini, there is a relationship between the state and the individual which gives rise to the affirmative duty to protect. Nicini, 212 F.3d at 806-08. As the Third Circuit has clarified, the DeShaney custodial relationship requirement that gives rise to the duty to protect applied in Nicini is different from the relationship required in a state-created danger case:

> We view the "state-created danger" relationship to be different than the "special relationship" required by *DeShaney* to impose liability under section 1983. The relationship requirement under the state-created danger theory contemplates some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense. The special relationship in *DeShaney,* on the other hand, has a custodial element to it-the state must affirmatively act to restrain an individual's freedom to act on his or her own behalf either through incarceration, institutionalization, or some other comparable limit of personal liberty.

Kneipp, 95 F.3d at 1209 n.22 (internal citations omitted).

City's conduct. There are also sufficient facts to establish that Leach may have been a member of a discrete class of persons, that is, youths who had been adjudicated delinquent. Indeed, the City's contract with Chad provided for the treatment and care of delinquent youths, and thus, Leach, as a member of that discrete class of persons, was subject to potential harm as a result of that contract.

10) Additionally, summary judgment is not appropriate because there is a genuine dispute of material fact as to whether the City affirmatively used its authority in a way that created a danger to Leach or that rendered him more vulnerable to danger than had the City not acted at all. Given evidence of the City's knowledge of problems with restraint procedures at Chad, a jury could find that the City's contract with Chad, renewed on an annual basis as a facility for delinquent youth, was an affirmative act that created more of a danger to Leach than if he were placed in another facility under contract with the City, or simply left at home. (Plaintiff's App., Exhibits 3-5); see Phillips, 515 F.3d at 235-36 ("The line between action and inaction may not always be clear."); see also, Kneipp, 95 F.3d 1199 (police officers acted affirmatively and created more of a danger when they left the intoxicated wife alone in cold weather at night than if her husband had been allowed to continue to accompany her home).

**WHEREFORE**, it is **ORDERED** that Defendant's Motion for Summary Judgment (doc. no. 49) is **DENIED.**

        **BY THE COURT:**

        /s/ Mitchell S. Goldberg
        _____
        **Mitchell S. Goldberg, J.**